## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISON

| | | |
|---|---|---|
| AARON JONES, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 6:23-cv-470 |
| ONLINE INFORMATION | ) | |
| SERVICES, INC. | ) | |
| | ) | |
| & | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ACTION REVENUE RECOVERY, | ) | |
| LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| JEFFERSON CAPITAL SYSTEMS, | ) | |
| LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| TRANS UNION, LLC | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Aaron Jones, by and through the undersigned counsel, and for his

Complaint against Defendants Online Information Services, Inc. ("OIS"), Action Revenue Recovery,

LLC ("ARR"), Jefferson Capital Systems, LLC ("JCS"), Equifax Information Services, LLC ("EQ"),

1

Experian Information Solutions, Inc. ("EX"), and Trans Union, LLC ("TU") (and together collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

**JURISDICTION**

1.      This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

2.      Venue is proper because Plaintiff resides here, the acts and transactions occurred here, and OIS, ARR, JCS, EQ, EX, and TU transact business here.

3.      Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4.      Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5.      Plaintiff resides in the city of Mabank, a part of Kaufman County, Texas 75147.

6.      The acts that occurred giving rise to this complaint occurred while Plaintiff was in the city of Mabank, a part of Kaufman County, Texas 75147, making the Tyler Division a proper venue under 28 U.S. Code § 1391(b)(2).

7.      Defendant OIS, a North Carolina corporation headquartered in Winterville, NC, practices as a debt collector throughout the country, including Texas.

8.      Defendant ARR, a Louisiana corporation headquartered in Monroe, LA, practices as a debt collector throughout the country, including Texas.

9.      Defendant JCS, a Georgia corporation headquartered in Saint Cloud, MN, practices as a debt collector throughout the country, including Texas.

10.     Defendants OIS, ARR, and JCS attempt to collect alleged debts throughout the state of Texas, including in Mabank city and Kaufman County.

11.     Defendants OIS, ARR, and JCS have actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided.

12.     Defendants OIS, ARR, and JCS have sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Mabank city and Kaufman County and Defendants attempt to collect alleged debts throughout the state of Texas.

13.     Defendants OIS, ARR, and JCS knowingly attempted to collect on debts allegedly incurred in Mabank, Texas and thus have sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

14.     Defendant EQ, a Georgia corporation headquartered in Atlanta, GA, practices as a debt collector throughout the country, including Texas.

15.     Defendant EQ serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Mabank city and Kaufman County.

16.     Defendant EQ has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EQ purposefully availed itself to the jurisdiction in which Plaintiff resided.

17.     Defendant EQ has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Mabank city and Kaufman County and Defendant attempts to collect alleged debts throughout the state of Texas.

18.     Defendant EQ knowingly reported information regarding a Plaintiff domiciled in Mabank, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

19.     Defendant EX, a California corporation headquartered in Costa Mesa, CA, practices as a debt collector throughout the country, including Texas.

20.     Defendant EX serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Mabank city and Kaufman County.

21.     Defendant EX has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EX purposefully availed itself to the jurisdiction in which Plaintiff resided.

22.     Defendant EX has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Mabank city and Kaufman County and Defendant attempts to collect alleged debts throughout the state of Texas.

23.      Defendant EX knowingly reported information regarding a Plaintiff domiciled in Mabank, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

24.     Defendant TU, a Delaware corporation headquartered in Chicago, IL, practices as a debt collector throughout the country, including Texas.

25.     Defendant TU serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Mabank city and Kaufman County.

26.     Defendant TU has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant TU purposefully availed itself to the jurisdiction in which Plaintiff resided.

27.     Defendant TU has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Mabank city and Kaufman County and Defendant attempts to collect alleged debts throughout the state of Texas.

28.      Defendant TU knowingly reported information regarding a Plaintiff domiciled in Mabank, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

## STANDING

29.      Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

30.      OIS, ARR, and JCS's collection activities violated the FDCPA.

31.      Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

32.      Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

33.      "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy

injury-in-fact requirement).

34.     "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

## PARTIES

35.     Plaintiff, Aaron Jones (hereafter "Plaintiff"), is a natural person currently residing in Kaufman County, in the state of Texas.

36.     Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

37.     Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

38.     Defendant OIS is a North Carolina corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 685 W Fire Tower Rd., Winterville, NC 28590.

39.     Defendant ARR is a Louisiana corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 910 Bres Ave., Monroe, LA 712015955.

40.     Defendant JCS is a Georgia corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 16 McLeland Road, Saint Cloud, MN 56303.

41.     OIS, ARR, and JCS are each engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

42.     OIS, ARR, and JCS regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another, and are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

43.     Defendant EQ is a Georgia corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

44.     Defendant EX is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

45.     Defendant TU is a Delaware corporation with its principal place of business located at 555 W. Adams Street, Chicago, IL 60661.

46.     Defendants OIS, ARR, and JCS are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

47.     EQ, EX, and TU are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). EQ, EX, and TU regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

a. Public record information;

b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

## FACTUAL ALLEGATIONS

48.     Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to a creditor other than OIS, ARR, and JCS.

49.      On a date better known by OIS, OIS began to attempt to collect an alleged consumer debt from the Plaintiff.

50.     The alleged debt was said to be owed to Stream Energy.

51.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

52.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

53.     The reporting of the alleged debt contains an inaccurate balance.

54.     The reporting of the alleged debt contains an inaccurate status.

55.     The reporting of the alleged debt contains inaccurate delinquency information.

56.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

57.     That OIS was reporting the collection account on Plaintiff's credit report with EQ and TU.

58.     That OIS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

59.     OIS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

60.     On or about 08/08/2022, Plaintiff sent dispute letters to EQ and TU notifying the account with OIS as disputed. **Exhibit A and Exhibit C.**

61.     These letters provided notice of the inaccurate reporting to EQ and TU.

62.     Once EQ and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case OIS.

63.     EQ and TU received the letters sent by Plaintiff.

64.     EQ and TU transmitted notice of these disputes to OIS via an Automated Credit Dispute Verification form ("ACDV").

65.    OIS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

66.    Alternatively, EQ and TU failed to send notice of the disputes to OIS after receiving notice of the disputes from Plaintiff.

67.    After receiving this notice, in any subsequent voluntary reporting, OIS must then include the dispute notation on said account.

68.    On or about 12/07/2022, Plaintiff received an updated credit file from EQ. **Exhibit D.**

69.    That the credit report was updated on 10/01/2022 by OIS.

70.    That the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to OIS.

71.    Alternatively, that the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify OIS.

72.    On or about 12/07/2022, Plaintiff received an updated credit file from TU. **Exhibit D.**

73.    That the credit report was updated on 11/07/2022 by OIS.

74.    That the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to OIS.

75.    Alternatively, that the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify OIS.

76.    That the updated 12/07/2022 credit report did not contain updated marked as disputed information.

77.     The updated 12/07/2022 credit report contained inaccurate information.

78.     OIS failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

79.     OIS must have voluntarily updated the Plaintiff's alleged account by communicating with EQ and TU.

80.     That OIS furnished information to EQ and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ and TU of the disputes.

81.     That OIS failed to update the account information and mark the account as disputed on the updated 12/07/2022 credit report after Plaintiff disputed the account on 08/08/2022 and was given notice of such by EQ and TU.

82.     In the alternative, if OIS properly updated the account information and marked the account as disputed with EQ and TU after receiving notification of disputes from Plaintiff, then EQ and TU failed to update the account information and mark the account as disputed on the updated 12/07/2022 credit report.

83.      That OIS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ and TU.

84.     Alternatively, EQ and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from OIS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

85.      On a date better known by ARR, ARR began to attempt to collect an alleged consumer debt from the Plaintiff.

86.     The alleged debt was said to be owed to Southwest Medical Imaging.

87.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

88.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

89.    The reporting of the alleged debt contains an inaccurate balance.

90.    The reporting of the alleged debt contains an inaccurate status.

91.    The reporting of the alleged debt contains inaccurate delinquency information.

92.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

93.    That ARR was reporting the collection account on Plaintiff's credit report with EX.

94.    That ARR was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

95.    ARR's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

96.    On or about 08/08/2022, Plaintiff sent a dispute letter to EX notifying the account with ARR as disputed. **Exhibit B.**

97.    This letter provided notice of the inaccurate reporting to EX.

98.    Once EX received notice of this letter, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case ARR.

99.    EX received a letter sent by Plaintiff.

100.    EX transmitted notice of these dispute to ARR via an Automated Credit Dispute Verification form ("ACDV").

101.    ARR was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

102. Alternatively, EX failed to send notice of the dispute to ARR after receiving notice of the dispute from Plaintiff.

103. After receiving this notice, in any subsequent voluntary reporting, ARR must then include the dispute notation on said account.

104. On or about 12/07/2022, Plaintiff received an updated credit file from EX. **Exhibit D.**

105. That the credit report was updated on 11/25/2022 by ARR.

106. That the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EX, and transmitted to ARR.

107. Alternatively, that the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EX after EX failed to notify ARR.

108. That the updated 12/07/2022 credit report did not contain updated marked as disputed information.

109. The updated 12/07/2022 credit report contained inaccurate information.

110. ARR failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

111. ARR must have voluntarily updated the Plaintiff's alleged account by communicating with EX.

112. That ARR furnished information to EX regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EX of the dispute.

113. That ARR failed to update the account information and mark the account as disputed on the updated 12/07/2022 credit report after Plaintiff disputed the account on 08/08/2022 and was given notice of such by EX.

114.    In the alternative, if ARR properly updated the account information and marked the account as disputed with EX after receiving notification of a dispute from Plaintiff, then EX failed to update the account information and mark the account as disputed on the updated 12/07/2022 credit report.

115.    That ARR never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EX.

116.    Alternatively, EX never updated the account information and marked the account as disputed even after receiving information of the dispute remark from ARR in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

117.    On a date better known by JCS, JCS began to attempt to collect an alleged consumer debt from the Plaintiff.

118.    The alleged debt was said to be owed to Verizon Wireless.

119.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

120.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

121.    The reporting of the alleged debt contains an inaccurate balance.

122.    The reporting of the alleged debt contains an inaccurate status.

123.    The reporting of the alleged debt contains inaccurate delinquency information.

124.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

125.    That JCS was reporting the collection account on Plaintiff's credit report with EQ, EX and TU.

126.    That JCS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

127.    JCS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

128.    On or about 08/08/2022, Plaintiff sent dispute letters to EQ, EX, and TU notifying the account with JCS as disputed. **Exhibit A, Exhibit B, and Exhibit C.**

129.    These letters provided notice of the inaccurate reporting to EQ, EX, and TU.

130.    Once EQ, EX, and TU received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case JCS.

131.    EQ, EX, and TU received the letters sent by Plaintiff.

132.    EQ, EX, and TU transmitted notice of these disputes to JCS via an Automated Credit Dispute Verification form ("ACDV").

133.    JCS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

134.    Alternatively, EQ, EX, and TU failed to send notice of the disputes to JCS after receiving notice of the disputes from Plaintiff.

135.    After receiving this notice, in any subsequent voluntary reporting, JCS must then include the dispute notation on said account.

136.    On or about 12/07/2022, Plaintiff received an updated credit file from EQ. **Exhibit D.**

137.    That the credit report was updated on 11/01/2022 by JCS.

138.    That the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to JCS.

139.    Alternatively, that the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify JCS.

140.    On or about 12/07/2022, Plaintiff received an updated credit file from EX. **Exhibit D.**

141.    That the credit report was updated on 11/25/2022 by JCS.

142.    That the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EX, and transmitted to JCS.

143.    Alternatively, that the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EX after EX failed to notify JCS.

144.    On or about 12/07/2022, Plaintiff received an updated credit file from TU. **Exhibit D.**

145.    That the credit report was updated on 11/25/2022 by JCS.

146.    That the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by TU, and transmitted to JCS.

147.    Alternatively, that the updated 12/07/2022 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by TU after TU failed to notify JCS.

148.    That the updated 12/07/2022 credit report did not contain updated marked as disputed information.

149.    The updated 12/07/2022 credit report contained inaccurate information.

150.    JCS failed to investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

151.    JCS must have voluntarily updated the Plaintiff's alleged account by communicating with EQ, EX, and TU.

152.    That JCS furnished information to EQ, EX, and TU regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EQ, EX, and TU of the disputes.

153.    That JCS failed to update the account information and mark the account as disputed on the updated 12/07/2022 credit report after Plaintiff disputed the account on 08/08/2022 and was given notice of such by EQ, EX, and TU.

154.    In the alternative, if JCS properly updated the account information and marked the account as disputed with EQ, EX, and TU after receiving notification of disputes from Plaintiff, then EQ, EX, and TU failed to update the account information and mark the account as disputed on the updated 12/07/2022 credit report.

155.     That JCS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EQ, EX, and TU.

156.    Alternatively, EQ, EX, and TU never updated the account information and marked the account as disputed even after receiving information of the dispute remark from JCS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

157.    All of OIS, ARR, and JCS's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

158.    All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

159.    Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the OIS, ARR, JCS, and/or EQ, EX, and TU.

160.    Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by OIS, ARR, JCS, and/or EQ, EX, and TU.

161.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by OIS, ARR, JCS, and/or EQ, EX, and TU.

162.    Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

163.    Plaintiff's injury-in-fact is fairly traceable to the challenged representations of OIS, ARR, JCS, and/or EQ, EX, and TU.

164.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions**

165.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

166.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

167.    That because Plaintiff disputed the debt, OIS, ARR, and JCS, when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree

with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

168.    OIS, ARR, and JCS used deceptive and misleading tactics when they communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

169.    OIS, ARR, and JCS's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, Goswami, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

170.    OIS, ARR, and JCS violated the Plaintiff's right not to be the target of misleading debt collection communications.

171.    OIS, ARR, and JCS violated the Plaintiff's right to a truthful and fair debt collection process.

172.    OIS, ARR, and JCS's communications with Plaintiff were deceptive and misleading.

173.    OIS, ARR, and JCS used unfair and unconscionable means to attempt to collect the alleged debt.

174.    OIS, ARR, and JCS's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to OIS, ARR, and JCS's collection efforts.

175.    OIS, ARR, and JCS's failure to mark debts as disputed they know or should know are disputed violates § 1692e, 1692e(8) of the FDCPA.

176.    OIS, ARR, and JCS's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding his situation.

177.    Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

178.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of OIS, ARR, and JCS's conduct.

179.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. OIS, ARR, and JCS's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

180.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress, and acute embarrassment.

181.    Defendants OIS, ARR, and JCS's violation of § 1692e of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Aaron Jones, prays that this Court:

A.    Declare that OIS, ARR, and JCS's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Aaron Jones, and against OIS, ARR, and JCS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse

182.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

183.    Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

184.    OIS, ARR, and JCS's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

185.    OIS, ARR, and JCS attempted to coerce Plaintiff into paying alleged debts his otherwise would not have paid by submitting false and inaccurate information to his credit report.

186.    OIS, ARR, and JCS could have no other purpose in doing this except to harm Plaintiff's reputation and deprive him of his ability to receive any type of credit line unless he paid the alleged debts.

187.    Defendants OIS, ARR, and JCS's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Aaron Jones, prays that this Court:

      A.      Declare that OIS, ARR, and JCS's debt collection actions violate the FDCPA;

      B.      Enter judgment in favor of Plaintiff Aaron Jones, and against OIS, ARR, and JCS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

      C.      Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

188.      Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

189.      Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

190.      OIS, ARR, and JCS attempted to collect debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

191.      OIS, ARR, and JCS used unfair and unconscionable means to attempt to collect the alleged debts.

192.      OIS, ARR, and JCS's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Aaron Jones, prays that this Court:

      A.      Declare that OIS, ARR, and JCS's debt collection actions violate the FDCPA;

      B.      Enter judgment in favor of Plaintiff Aaron Jones, and against OIS, ARR, and JCS, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.      Grant other such further relief as deemed just and proper.

### Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information

193.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

194.    EQ, EX, and TU violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they published and maintain concerning the Plaintiff.

195.    As a result of this conduct, action and inaction of EQ, EX, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

196.    EQ, EX, and TU's conduct, action, and inaction were willful, rendering them liable for punitive damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

197.    The Plaintiff is entitled to recovery costs and attorney's fees from EQ, EX, and TU in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Aaron Jones, prays that this Court:

A.      Declare that EQ, EX, and TU's credit reporting actions violate the FCRA;

B.      Enter judgment in favor of Plaintiff Aaron Jones, and against EQ, EX, and TU, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.      Or, in the alternative, enter judgment in favor of Plaintiff Aaron Jones, and against EQ, EX, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.     Grant other such further relief as deemed just and proper.

## Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

198.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

199.    Defendants EQ, EX, and TU violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to OIS, ARR, and JCS; by failing to maintain reasonable procedures with which to filter and verify disputed information in the plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

200.    As a result of this conduct, action and inaction of EQ, EX, and TU, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

201.    EQ, EX, and TU's conduct, action and inaction were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

202.    The Plaintiff is entitled to recovery costs and attorney's fees from EQ, EX, and TU in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Aaron Jones prays that this Court:

A.    Declare that EQ, EX, and TU's credit reporting actions violate the FCRA;

      B.    Enter judgment in favor of Plaintiff Aaron Jones, and against EQ, EX, and TU, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

      C.    Or, in the alternative, enter judgment in favor of Plaintiff Aaron Jones, and against EQ, EX, and TU, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

      D.    Grant other such further relief as deemed just and proper.

## Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

203.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

204.    Defendants OIS, ARR, and JCS violated 15 U.S.C. § 1681s-2(b) by continuing to report the OIS, ARR, and JCS representations within Plaintiff's credit file with EQ, EX, and TU without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the OIS, ARR, and JCS representations; by failing to review all relevant information regarding same; by failing to accurately respond to OIS, ARR, and JCS; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the OIS, ARR, and JCS representations to the consumer reporting agencies.

205.    As a result of this conduct, action, and inaction of OIS, ARR, and JCS, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

206.    Defendants OIS, ARR, and JCS's conduct, action and inaction were willful, rendering them liable for actual or statutory, and punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

207.    Plaintiff is entitled to recover costs and attorney's fees from OIS, ARR, and JCS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Aaron Jones, prays that this Court:

A.    Declare that OIS, ARR, and JCS's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Aaron Jones, and against OIS, ARR, and JCS, for actual damages, punitive damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Aaron Jones, and against OIS, ARR, and JCS, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

## JURY DEMAND

208.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: September 19, 2023                    Respectfully Submitted,


**HALVORSEN KLOTE**

By:    _/s/ Joel S. Halvorsen_

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com